UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY Y. DAVENPORT,

    Plaintiff                                Civil Action No. 10-11350

v.                                              District Judge Denise Page Hood
                                                   Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Tracy Y. Davenport brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income (Tr. 234). Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motions for sentence four and sentence six remand GRANTED to the extent that the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 25, 2005, alleging disability as of January 1, 2005 (Tr. 39-41, 234-236). After the initial denial of benefits, Plaintiff requested an administrative hearing, held in Oak Park, Michigan on August 6, 2007 (Tr. 258). Administrative Law Judge ("ALJ") Michael F. Wilenkin presided (Tr. 258). Plaintiff, unrepresented at the time of hearing, testified, as did vocational expert

("VE") James Fuller (Tr. 265-295, 295-298). On October 15, 2007, ALJ Wilenkin determined that Plaintiff was not disabled (Tr. 23). On February 3, 2010, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the administrative decision on April 5, 2010.

## **BACKGROUND FACTS**

Plaintiff, born June 23, 1967, was 40 when the ALJ issued his decision (Tr. 39). She completed eleventh grade and worked previously as a retail manager and group home manager (Tr. 52, 56). She alleges disability as a result of heart problems, sleep apnea, asthma, and hypertension (Tr. 51).

### A. Plaintiff's Testimony

Plaintiff began her testimony by stating that she wished to proceed with the hearing unrepresented (Tr. 264). Plaintiff indicated that she currently lived in an apartment with her two children and sister (Tr. 265). She reported that she held a valid driver's license and continued to drive (Tr. 266). Plaintiff stated that her previous attempts to obtain a GED were thwarted by a high risk pregnancy (Tr. 266). However, she indicated that she had completed a course in home healthcare (Tr. 267).

Plaintiff reported that her home healthcare work entailed performing administrative tasks, attending meetings, and cleaning and cooking (Tr. 267). She added that prior to her healthcare job, she was the assistant manager of a department store which required her to inventory merchandise, count cash, and handle paperwork (Tr. 268). She indicated that before the department store position, she worked at a fast food restaurant and as a warehouse packer and sorter (Tr. 270-271). Plaintiff testified that she stopped working in June, 2004 when she lost her job, receiving unemployment checks for several months (Tr. 271).

Plaintiff alleged that she experienced heart palpitations requiring emergency treatment, hospitalization, and medication (Tr. 277-281). She also indicated that she experienced dizziness and falling (attributing her knee problems to frequent falls) and sleep apnea (Tr. 282). She reported that she used a CPAP but nonetheless experienced trouble sleeping (Tr. 283). She stated that her physician "where [she went] to a therapist" had given her Ativan for sleeplessness (Tr. 284). She indicated that she received counseling after experiencing depression upon losing her house (Tr. 284). She stated that although she currently saw both a counselor and a psychiatrist, her condition was not improving (Tr. 285-286). She added that she had received psychological treatment for approximately 18 months (Tr. 286).

Plaintiff alleged that she was unable to walk even one block as a result of her knee pain, a racing pulse, and shortness of breath, but acknowledged that she could sit for over one hour (Tr. 288). She denied the ability to stoop, squat, crouch, kneel, bend, or climb stairs (Tr. 290). She also alleged back pain, difficulty overhead reaching, and the need to lie down three times a day (Tr. 291-292).

### B. Medical Evidence

#### 1. Treating Sources

In November, 2003, Plaintiff sought treatment for tachycardia (heart palpitations) (Tr. 103). The following month, Plaintiff sought emergency treatment for weakness, shortness of breath, and dizziness upon exertion (Tr. 99, 176). January, 2004 imaging studies were negative for deep vein thrombosis (Tr. 169). An echocardiogram showed mild abnormalities (Tr. 178). Plaintiff was diagnosed with "probable" sleep apnea (Tr. 171). Imaging studies of the chest were unremarkable (Tr. 105). A December, 2004 pulmonary function test showed a "mildly reduced" chest capacity

(Tr. 163). Treating notes from the first two months of 2005 show that Plaintiff was non-compliant with medication (Tr. 124). In March, 2005, treating notes show that the use of a CPAP eliminated symptoms of sleep apnea (Tr. 118). Plaintiff reported the absence of daytime sleepiness (Tr. 118). In June, 2005, an echocardiogram showed left ventricular hypertrophy but "preserved" ventricular function (Tr. 111-113). Treating notes show that heart palpitations had resolved spontaneously (Tr. 116). In July, 2005, she reported that right knee pain was lessened with Motrin and warm compresses (Tr. 109). The following month, Plaintiff sought emergency treatment for shortness of breath and palpitations (Tr. 127). She was admitted after medication failed to resolve the palpitations (Tr. 128). September, 2005 emergency room notes show that Plaintiff again sought treatment for palpitations (Tr. 155).

In May, 2007, Plaintiff returned to the emergency room, reporting dizziness (Tr. 141). Imaging studies and a vascular study were negative for significant abnormalities (Tr. 142, 148, 150). June, 2007 emergency room notes indicate a history of hypertension, palpitations, and depression (Tr. 132)

### 2. Non-Examining Sources

In October, 2005, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours per day and sit for six; and push and pull without limitation (Tr. 91). Postural limitations consisted of a preclusion on rope and ladder climbing, occasional stooping, kneeling, and stair climbing; and frequent (as opposed to *constant*) balancing and crouching (Tr. 92). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations, but concluded that Plaintiff's allegations of limitations were "mostly" and/or "partially" credible (Tr. 91, 92-94, 98).

### 3.  Material Submitted Subsequent to the ALJ's Decision

A letter by treating psychiatrist Kanchana Madhavan, M.D. notes that the ALJ's finding that Plaintiff was assigned a GAF of 60-65 over the course of counseling was the result of the misreading of the treating notes, stating that Plaintiff's GAF remained in the 40-45 range.  *Doc #12-1* (*citing* Tr. 18).  A November, 2005 psychological intake assessment indicates that Plaintiff had completed a "no harm" contract stating that she did not intend to follow through on an unspecified threat (Tr. 257).  In January, 2006, psychological therapy notes state that she was facing foreclosure as a result of a job loss (Tr. 255).

November, 2006 treating notes state that Plaintiff, currently taking Prozac, reported depression and anxiety but was not perceived as a risk to herself of others  (Tr. 196, 198).  She was described as depressed but "very focused on providing for her children" (Tr. 198).  She was assigned a GAF of 45[1] (Tr. 197).  The following month, Plaintiff reported feeling "overwhelmed" (Tr. 190). She was assigned a GAF of 40-45[2] (Tr. 194).  April, 2007 notes state that Plaintiff was less depressed and apathetic (Tr. 186).  In December, 2007, Plaintiff facing eviction, was tearful during a therapy session.  *Id.* at pg. 4-5 of 20.  She reported that she had stopped taking anti-depressive medication (Tr. 243).

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

## C.     Vocational Expert Testimony

VE James Fuller classified Plaintiff's former work as a home health aid as semiskilled and exertionally medium; fast food worker, unskilled/light; and packager, sorter, assembler, unskilled/light[3] (Tr. 295). The VE reported that the Plaintiff's managerial experience would transfer to "some managerial and supervisory positions at the sedentary level." The VE testified that if Plaintiff's alleged need to nap each day were credited, she would be unable to perform any of her past work (Tr. 296).

The ALJ then posed the following hypothetical question:

Let's assume the existence of a hypothetical individual. One who as is the claimant a younger individual with a limited education, past relevant work experience similar to that of the claimant. Assume that such an individual is able to sit six of eight hours, stand or walk two of eight hours, lift as much as 10 pounds occasionally and lesser [inaudible] more frequently. And assume the history of what appears to be super ventricular tachycardia is susceptible and fairly [inaudible]. It appears to be readily susceptible conversion with appropriate therapeutic intervention. And they assume that all this underlying pathology is not very pleasant, it is not of sufficient severity, intensity or consequence to preclude function in the manner I suggest. The record suggests a history of chronic obstructive sleep apnea syndrome, which appears to be according to this record well controlled and fully compensated with the use of the CPAP machine. And such it is of no vocational consequence. This record as it exists now is silent with respect to significant – any significant musculoskeletal deficits. And the extent to which they were – they exist rather based on the record before me does not suggest any impediment to functioning in the manner I've suggested. There is of course, the matter of morbid obesity probably affecting large joints of the body, particularly the legs to some extent. No doubt there's some ongoing discomfort associated with that. Nevertheless, this problem does not

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

preclude functioning at the level suggested. There's an assertion of depression. This record is silent on that point also. There's no indication that this depression is of sufficient moment to impact upon the hypothetical individual's ability to perform the usual and customary cognitive aspects of vocational functioning. She is able to understand, remember and follow instructions [inaudible] then complete assigned tasks in a timely and appropriate fashion. To respond appropriately to customary work pressure, supervisory personnel, coworkers, the public, and the like. Lastly, you may assume the deficit suffered or the modalities employed to treat the same do not warrant that she lie down during the day. All of this bing the case would such an individual be able to perform of the work performed by the claimant in the relevant past. If not, would she then be able to perform any other work that exists in the geographic areas I mentioned?

(Tr. 296-297).

Based on the above limitations, the VE found that Plaintiff would be unable to return to her past work, but could perform the sedentary jobs of cashier (6,000 jobs in the regional economy); assembler (3,000); packager (3,000); sorter (2,000); inspector (2,000); and security monitor (4,000) (Tr. 298). The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* (Tr. 349).

### D.    The ALJ's Decision

Citing Plaintiff's medical records, ALJ Wilenkin found the severe impairments of "supraventricular tachycardia, morbid obesity, [and] hypertension" (noting further that Plaintiff had received treatment for depression and sleep apnea) but that none of the conditions met or medically equaled a Listing found in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17-18). He determined that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work precluding "any prolonged walking or standing" and "any complex or varied tasks" (Tr. 19). He also found that she had "acquired work skills from past relevant work" but that her limitations prevented transferring those skills to another position (Tr. 23). Citing the VE's job numbers, he found that she could perform a range of sedentary work (Tr. 23).

The ALJ discounted Plaintiff's allegations of disability, noting that her conditions of shortness of breath and heart palpitations were controlled with medication (Tr. 21-22). The ALJ also noted that Plaintiff had admitted to treating sources that she did not nap during the day, contrary to her claim that symptoms of sleep apnea created work related limitations (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). Because here, "the Appeals Council reviewed and supplemented the decision of the ALJ, the review is of the [A]ppeals Council decision and the portions of the ALJ decision that it adopted." *O'Dell v. Astrue,* 736 F.Supp.2d 378, 385 (D.N.H. 2010)(citing *Sims v. Apfel,* 530 U.S. 103, 106-07, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff's original motion for summary judgment makes seven independent arguments in favor of remand (*Dock. #10* at pgs. 7-20). Four of these arguments are without merit. The other three claims of errors asserted by Plaintiff stem from the ALJ's misreading of the psychological records and in fact support a remand for further fact-finding. Plaintiff also submitted a separate motion for a "sentence six" remand which is accompanied by a letter by Dr. Madhavan and treating records submitted after the September 26, 2007 administrative opinion. *Dock. #11-12.* The following discussion is categorized by losing arguments, winning arguments, and a brief discussion of the sentence six material.

**A. Meritless Arguments**

**1. Heightened Duty**

Plaintiff, unrepresented at the time of hearing, asserts that the ALJ breached his "heightened duty" to develop the record in light of her *pro se* status. *Dock. #10,* pgs. 11-12 (citing *Lashley v. Secretary of HHS,* 708 F.2d 1048, 1051-1052 (6th Cir. 1983). However, she is short on the particulars of how the ALJ erred on this point. To the contrary, the transcript contains a five-page exchange in which the ALJ told Plaintiff that (1) she had a right to counsel, (2) a list of attorneys would be provided to her (3) he was willing to adjourn the hearing until she found counsel (Tr. 260-264). While Plaintiff also asserts that the ALJ was required to order an RFC assessment from her treating physician, the ALJ was well within his discretion in declining to order additional records. 20 C.F.R. §416.912(e) states that when the evidence received from a treating source is inadequate to determine disability (1) the agency will recontact the source for "additional evidence or clarification." However, the medical records adequately document Plaintiff's limitations as a result of obesity, knee problems, asthma, and heart palpitations. Finally, while Plaintiff faults the ALJ for misreading a psychological record, a good faith misreading of poorly handwritten treating notes (discussed further below) does not support the argument that the ALJ failed in his affirmative duty to develop the record.

**2. RFC**

Next, Plaintiff disputes the ALJ's finding that she was capable of sedentary work. *Dock. #10* at 13. She cites the Residual Functional Capacity Assessment which quotes her allegation that she is limited to walking one block (Tr. 98). She then cites the same assessor's conclusion that she is "mostly credible," arguing that her inability to walk more than one block ought to have been

included in the ultimate RFC. *Id. Dock. #10* at 14. However, the non-examining Assessment cannot be read to endorse Plaintiff's "one block" claim. First, she ignores the fact that although the non-examining source stated at one point that she was "mostly credible," the paragraph acknowledging her "walk one block" claim ends with the statement that she is only "partially," rather than mostly credible (Tr. 98). Further, the examiner does not indicate *which* claims he found credible, but instead noted that the claims of limitation were undermined by the fact that she cared for her children, cooked, cleaned, and performed personal care activities without help (Tr. 98). Moreover, her argument that the Assessment adopted the "one block" claim is contradicted the Assessment's finding that she was capable of standing and/or walking at least two hours in an eight-hour workday (Tr. 91). Although Plaintiff argues that her "only one block" claim ought to have been credited by the ALJ, the present RFC (at least as to her physical limitations) reflects a fair reading of the record.

### 3. Obesity

Plaintiff argues next that the ALJ did not consider the work related effects of her obesity as required by SSR 02-01p. *Dock. #10* at 14-16. While obesity, by itself, does not constitute a disability, pursuant to (SSR) 02-01p, the condition must be considered in combination with other impairments in determining whether the claimant is disabled. Contrary to Plaintiff's assertion, the administrative opinion is replete with references to her morbid obesity. The ALJ found morbid obesity a "severe" impairment at Step Two of his analysis, later finding that Plaintiff's joint condition was exacerbated by her weight (Tr. 17, 20). In finding that Plaintiff was relegated to sedentary work, he again acknowledged that "obesity would likely interfere with exertional activities, such as prolonged standing or walking or the lifting of over 10 pounds" (Tr. 22). Obesity

was also listed among the hypothetical limitations (Tr. 297). Although Plaintiff does not like the ultimate conclusion that her obesity was non-disabling, her argument that the ALJ did not factor the condition into his decision is flatly contradicted by the record.

### 4. Credibility

Plaintiff argues next that the ALJ did not provide sufficient reasons for discounting her testimony that she napped/lay down on a daily basis. *Docket #10,* at 16-18. She also accuses the ALJ of omitting the "daily naps" limitation from the hypothetical question for the purposes of eliciting a non-disability finding from the VE. *Id.* at 18. Finally, she contends that the ALJ improperly discredited her claims by noting that she applied for DIB shortly after her unemployment benefits ended. *Id.* at 17.

The ALJ's conclusion that Plaintiff did not require daily naps is well explained and well supported by the record. He cited May, 2007 sleep apnea studies stating that she did not nap during the day (Tr. 22 *citing* 145). In March, 2005, Plaintiff denied sleepiness as a result of the use of a CPAP (Tr. 118). Plaintiff's implied claim that the ALJ omitted key impairments from the hypothetical question for the purpose of unfairly denying her benefits is without support. Likewise, the hearing transcript does not support her contention that she was "badgered" into falsely claiming disability at the same time she was collecting unemployment benefits. The transcript reads as follows:

Q. Your application as I indicated before says that you became disabled on January 1, 2005.

A. No. I --

> Q. No?
>
> A. I stopped working before then, but I went – my mother had told me after I had got out the hospital to go apply [for DIB] and I went but I couldn't do the application because I was getting unemployment because I had lost my job and I got unemployment

(Tr. 271).

Plaintiff presently acknowledges that she indeed applied for DIB in the month following the termination of her unemployment benefits. *Docket #10* at 17. Her testimony indicates that she would have applied for DIB earlier if not barred by the fact that she was receiving unemployment (Tr. 271). The ALJ was entitled to discount her credibility on the basis that she applied for DIB immediately upon the expiration of her unemployment benefits. *See Workman v. Commissioner of Social Sec.*, 105 Fed.Appx. 794, 801, 2004 WL 1745782, *7 (C.A.6 (Ky. (6th Cir. 2004)(citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983))(Upholding an ALJ's credibility determination on the basis that "[a]pplications for unemployment and disability benefits are inherently inconsistent").

### B. The ALJ's Misreading of the Psychological Records Mandates A Remand for Further Factfinding

The remaining arguments for remand hinge on the ALJ's erroneous finding that Plaintiff was assigned a GAF of 62-65 (suggesting moderate or mild psychological impairment) by a treating source in February, 2007 and similar scores in April and August, 2007[4] (Tr. 18 *citing* 183, 186, 189).

---

[4] A GAF score of 51–60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision at 34 ( DSM–IV–TR ) (4th ed.) GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *Id.*

Plaintiff has submitted a letter by treating psychiatrist Kanchana Madhavan, M.D. stating that in fact, these notes should be read to state GAF scores of *40–45. Docket #12-1*.Defendant, discounting the import of the misreading, argues that substantial evidence nonetheless supports the non-disability finding.

To be sure, the GAF score alone would not be dispositive of whether an individual is disabled. However, in this case, the ALJ stated that he relied directly on this misreading when finding that Plaintiff experienced only "mild" psychological impairment (Tr. 18). This finding created additional errors. The ALJ's hypothetical was tainted by his erroneous statement that the record contained "no indication that . . . depression is of sufficient moment to impact upon the hypothetical individual's ability to perform the usual and customary cognitive aspects of vocational functioning . . . . [or] is of sufficient moment to impact upon the hypothetical individual's ability to perform the usual and customary cognitive aspects of vocational functioning" (Tr. 297). At a minimum, it is not clear whether the ALJ would have added additional limitations to the hypothetical had he had known that Plaintiff's GAF scores were consistently in the 40-45 range. Because the job findings were given in response to an insufficient hypothetical, the VE's testimony would not constitute substantial evidence. *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). Thus, the Commissioner has not met his burden at Step Five of the sequential analysis.[5] *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003)(Roberts, J.).

---

[5] Notwithstanding the fact that the ALJ's misreading of the psychological records was brought to light as a result of newly submitted material, independent grounds exist for a sentence four remand. Although the transcript establishes (1) Plaintiff received extensive psychological counseling (2) the psychological records had not been reviewed at the time of the hearing, the hypothetical question, (posed without benefit of the counseling records, appears to have understated her psychological impairments (Tr. 286-287, 294-295-297).

### C.  Sentence Six

Plaintiff argues alternatively that the case should be remanded to the administrative level pursuant to the sixth sentence of 42 U.S.C. 405(g) for consideration of latter submitted material, including psychological treating notes and the above-referenced letter by Dr. Madhavan. *Docket #11.*

Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g).

The "newer" records can be divided into three categories. The first group consists of psychological treating records predating the ALJ's September 26, 2007 decision which were presented by Plaintiff's counsel for Appeals Council consideration (Tr. 244-257). These records are arguably "material" to the determination. The second group, also presented to the Appeals Council, pertain to Plaintiff's condition subsequent to the hearing and would be immaterial to the present application for benefits. *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 712 (6th Cir.1988). The third category is Dr. Madhavan's letter stating that she had assigned Plaintiff GAFs exclusively in the 40-45 range. *Dock. #12-1.* Because the letter is new, material to the original determination, and good cause exists for submitting it after the ALJ's opinion, it qualifies for a sentence six remand. In addition, because I find that a remand under the fourth sentence of 405(g) is appropriate, the "sentence six" material - even records created after the administrative decision -

may be consider *in toto* upon remand. Accordingly, judgment should be entered for the Plaintiff, with the case being remanded under sentence four. *Id.*[6]

Finally, because Plaintiff's proof of disability far from "overwhelming," the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. Notwithstanding the newer material, the ALJ may well find once more that she is not disabled. Accordingly, the case should be remanded to the administrative level for further proceedings, directing the ALJ to (1) reexamine Plaintiff's psychological records in light of Dr. Madhavan's clarification letter (2) consider the other sentence six evidence submitted to the Appeals Council and (3) take additional VE testimony reflecting an accurate reading of the psychological records.

## CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which

---

[6] A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order).

raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

```
                                        s/R. Steven Whalen
                                        R.  STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE
Dated: May 6, 2011
```

_____

### CERTIFICATE OF SERVICE

I hereby certify on May 9, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 9, 2011: **None.**

```
                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge R. Steven Whalen
                                        (313) 234-5217
```